[Cite as *State ex rel. Wal-Mart Stores, Inc. v. Indus. Comm.*, 2019-Ohio-2523.]

# IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Wal-Mart Stores, Inc., | : | |
| | : | |
| Relator, | : | No. 18AP-195 |
| | : | |
| v. | : | (REGULAR CALENDAR) |
| | : | |
| Industrial Commission of Ohio et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

---

# D E C I S I O N

## Rendered on June 25, 2019

---

**On brief**: *Dawson & Associates, LLC, Shane M. Dawson,* and *Jared L. Buker,* for relator.

**On brief**: *Dave Yost,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

---

## IN MANDAMUS

BROWN, J.

{¶ 1} Relator, Wal-Mart Stores, Inc., has filed an original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission") to: (1) vacate its order denying relator's request to suspend the claim of respondent, Bradley Dillon ("claimant"), pursuant to R.C. 4123.651(C), (2) vacate its order in which the commission refused to exercise its continuing jurisdiction over the above order, and (3) order the commission to suspend claimant's claim.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court who issued the appended

decision, including findings of facts and conclusions of law. In that decision, the magistrate recommended this court deny relator's request for a writ of mandamus on the basis the commission did not abuse its discretion in finding relator's medical release was not substantially similar to that provided by the Ohio Bureau of Workers' Compensation; the magistrate further concluded the commission did not abuse its discretion in refusing to exercise its continuing jurisdiction over the matter. No objections have been filed to that decision.

{¶ 3} Pursuant to this court's independent review, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, with the exception of the language in the magistrate's conclusions of law regarding assumptions arising from the fact claimant was not represented by counsel. In accordance with the magistrate's recommendation, relator's request for a writ of mandamus is denied.

*Writ of mandamus denied.*

BRUNNER and NELSON, JJ., concur.

_____

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

The State ex rel.                                  :
Wal-Mart Stores, Inc.,
                                                   :
          Relator,
                                                   :
v.                                                              No. 18AP-195
                                                   :
Industrial Commission of Ohio et al.,                        (REGULAR CALENDAR)
                                                   :
          Respondents.
                                                   :

---

### M A G I S T R A T E ' S   D E C I S I O N

**Rendered on March 13, 2019**

---

*Dawson & Associates, LLC, Shane M. Dawson,* and *Jared L. Buker,* for relator.

*Dave Yost,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

{¶ 4}  Relator, Wal-Mart Stores, Inc., has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to (1) vacate its order denying relator's request to suspend the claim of respondent Bradley Dillon ("claimant") pursuant to R.C. 4123.651(C), (2) to vacate its order wherein the commission refused to exercise continuing jurisdiction over the aforementioned order, and (3) order the commission to suspend claimant's claim.

Findings of Fact:

{¶ 5}   1. According to claimant, he sustained a work-related injury on June 9, 2016 while working for relator.  Claimant asserts that, while reinstalling a ceiling tile, a small piece of insulation fell into his left eye.

{¶ 6}   2. On March 16, 2017, relator sent a letter to claimant requesting he sign enclosed medical authorization forms and provide the names and addresses of any medical providers who had examined him since January 2004.  Specifically, that request provides:

> The law firm of Dawson & Myers, LLC represents the above-designated employer in all matters relating to the workers' compensation claim referenced above. Enclosed are medical authorizations which we ask you sign and return to us, authorizing us to obtain complete copies of the records from Groveport Occupational Health, Eye Specialists, Inc., Dr. Daryl Kaswinkel, M.D., and Diley Ridge Medical Center. Also, we are including an Identification of Medical Providers form, and we ask that you provide us with the names and addresses of any physicians, chiropractors, hospitals, clinics, therapists or other medical providers who have examined and/or treated you for the period January 1, 2004, through the present for any issues involving your eyes. Finally, enclosed are blank authorizations which we ask you to sign and date only.
>
> Please return the releases and provider disclosure forms by March 30, 2017. Thank you for your prompt attention to this matter.

(Emphasis sic.)

Relator provided the following release for claimant to sign and return:

> This will authorize you to permit Dawson & Myers, LLC or its duly authorized representative, to examine and make copies of my case records, inpatient and outpatient hospital or clinic medical records, any medical records relating to counseling, treatments and surgeries which you have rendered to me, at any time, including, but not limited to, emergency room records, histories, health history questionnaires, findings, nurses notes, rehabilitation records, x-ray films, x-ray readings and diagnosis, office notes, progress notes, reports, all diagnostic tests results and reports, all correspondence between physicians or attorneys or any other records in your custody or control.

The authorization to release medical information shall remain in effect for one year. However, I understand that I have the right to revoke this authorization at any time by providing written notice of such revocation to the employer or employer's representative. My decision to revoke this authorization will be effective, except in the case that any provider referenced above has relied on my authorization and release of information.

I understand the provider(s) referenced above may not make my completing and signing this authorization a condition of my treatment.

I understand the parties I am authorizing the release of information to are exempt from the federal privacy requirements of the Health Insurance Portability and Accountability Act of 1996 (HIPPA) as they administer workers' compensation programs. Information disclosed pursuant to this authorization may be redisclosed by them and may no longer be protected by the federal privacy requirements. I understand such redisclosures may include, but are not limited to, the following:

- A copy of the medical information the employer receives may be forwarded to BWC by the employer.

- A copy of the medical information will be available to me or my physician of record upon request to BWC or to the employer.

A copy of this authorization is as valid as the original.

{¶ 7} 3. When claimant did not respond, relator sent a second request for the same information on March 30, 2017.

{¶ 8} 4. When relator did not receive a reply from claimant following the second request, relator filed a request for suspension of the claim pursuant to R.C. 4123.651, which provides for the suspension of a claim if a claimant, without good cause, refuses to execute a release for medical information.

{¶ 9} 5. In a compliance letter mailed April 20, 2017, relator's motion was denied based on the finding that the medical release submitted was not substantially similar to the Ohio Bureau of Workers' Compensation ("BWC") medical release.

{¶ 10} 6. Relator objected to the compliance letter and the matter was heard before a staff hearing officer ("SHO") on April 28, 2017. The SHO also denied relator's

request to suspend the claim finding that relator's medical release was too broad. Claimant alleged an injury to his left eye; however, relator's medical release was for all medical records. Specifically, the SHO order provides:

> The self-insured employer's 4/14/2017 request to suspend the claim due to the injured worker's failure to complete the medical release sent to him by the employer is denied based on a finding that the release is not substantially similar to the Administrator's release form and does not conform with R.C. 4123.651 because it is overbroad and does not limit itself to only the issues necessary to for the administration of the claim.
>
> The BWC medical release, like the statute, has language that limits the release to medical records relevant to the injuries alleged in the worker's compensation claim. The FROI-1 in this case indicates a claim for only an injury to the left eye. The employer's medical release is for all medical records and does not limit itself to medical records relevant to an alleged injury to the eye or explain how any other medical records are relevant to a fair adjudication of an injury to the eye or what evidence indicates the need for medical records beyond those to the eye. Because the medical release sent by the employer does not conform to the statutory requirements the request to suspend the claim is denied.
>
> The employer's counsel argued the requirement to limit the release to only medical records relevant to the alleged injury is fulfilled by informing the injured worker to only list medical providers who have treated him for the conditions or body parts alleged to have been injured in the claim. This argument is not found persuasive because this does not inform the physician to limit what is released to the body parts alleged to have been injured in the claim and it is the physician who receives the release and supplies the medical records and not the injured worker. It is the physician who needs to be informed the release is limited to records relevant to the alleged work injury because he or she may have also treated the injured worker for other medical conditions unrelated to the alleged worker's compensation claim.
>
> All the evidence was reviewed and considered.

{¶ 11}  7.  Relator filed a request for reconsideration.

{¶ 12}  8.  In an interlocutory order mailed May 25, 2017, the commission took the matter under advisement.

{¶ 13}  9.  In the meantime, relator submitted a public records request to the commission for documents relating to the commission's interpretation of medical releases and/or what constitutes a medical release that is substantially similar to the BWC's medical release.

{¶ 14}  10.  The commission provided documents as requested and specifically noted in its letter to relator that the commission determines these issues on a case-by-case basis.  Relator also requested the commission subpoena Tom Connor, the director of adjudicatory services for the commission, to testify concerning the commission's internal policy and practice regarding medical release forms.

{¶ 15}  11.  The commission denied the subpoena.  Ultimately, the commission denied relator's request to exercise continuing jurisdiction.

{¶ 16}  12.  On February 2, 2018, relator filed another request for suspension of claimant's claim on grounds that claimant failed to appear for a medical examination.

{¶ 17}  13.  After finding that claimant did not receive notice of the independent medical examination, the commission denied relator's February 2, 2018 request to suspend claimant's claim.

{¶ 18}  14.  Relator sent claimant two more notices concerning medical examinations; however, claimant failed to appear for either of those examinations.

{¶ 19}  15.  Based on claimant's continued failure to appear for medical examinations after sending those notices to the proper address, the commission suspended all activity in the claim.

{¶ 20}  16.  Thereafter, relator filed this mandamus action alleging that the commission should have suspended claimant's claim for his failure to sign the medical release, that relator contends is substantially similar to the BWC's standard medical release, and that the commission should have exercised continuing jurisdiction to vacate that denial as well as its denial of relator's request to subpoena commission employee, Connor, to testify concerning his training of commission employees on what constitutes a substantially similar medical release.

Conclusions of Law:

{¶ 21} For the reasons that follow, it is this magistrate's decision that relator has not demonstrated the commission abused its discretion when it denied relator's request to suspend claimant's claim knowing the commission refused relator's request to exercise its continuing jurisdiction.

{¶ 22} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 24} As an initial matter, it is undisputed that relator's initial letters to claimant asking him to sign the medical release were mailed to the wrong address. Subsequently, however, the commission had the opportunity to consider whether it should grant relator's motion and suspend the claim.

{¶ 25} R.C. 4123.651(B) requires the BWC prepare a form for the release of medical information to be signed by claimants:

> The bureau of workers' compensation shall prepare a form for the release of medical information, records, and reports relative to the issues necessary for the administration of a claim under this chapter. The claimant promptly shall provide a current signed release of the information, records, and reports when requested by the employer. The employer

promptly shall provide copies of all medical information, records, and reports to the bureau and to the claimant or his representative upon request.

{¶ 26} Form C-101 Authorization to Release Medical Information specifically limits the release to the workers' compensation claim and includes the date of injury. Otherwise the language provides:

I, the above-named injured worker, understand I am allowing the Opportunities for Ohioans with Disabilities and the providers (persons or facilities) named here (_____) that attend or examine me to release the following medical, psychological and/or psychiatric information (excluding psychotherapy notes) that are related causally or historically to physical or mental injuries relevant to my workers' compensation claim:

- Pathology slides and immunohistochemical staining results, if applicable;

- Hospital admission history and physical; emergency room reports; hospital discharge summaries; physician office notes; physical therapist, occupational therapist or athletic trainer assessments and progress notes; consultation reports; lab results; medical reports; surgical reports; diagnostic reports; procedure reports; nursing home and skilled nursing facilities documentation; home nursing progress notes; or other listed below.

* * *

I understand the provider(s) referenced above may not make my completing and signing this authorization a condition of my treatment.

I am authorizing the release of this information to the following: the Ohio Bureau of Workers' Compensation (BWC), the Industrial Commission of Ohio, the above-named employer, the employer's managed care organization or qualified health plan and any authorized representatives.

I understand this information is being released to the above-referenced persons and/or entities for use in administering my workers' compensation claim.

This authorization to release medical, psychological and/or psychiatric information shall remain in effect for as long as my workers' compensation claim remains open under Ohio law. I understand I have the right to revoke this authorization at any time. However, I must submit my revocation in writing and file it with BWC or my self-insured employer. My decision to revoke this authorization will be effective, except in the case that any provider referenced above already has relied on my authorization and released information.

I understand the parties I am authorizing the release of information to are exempted from the federal privacy requirements of the Health Insurance Portability and Accountability Act of 1996 as they administer workers' compensation programs. Information disclosed pursuant to this authorization may be redisclosed by them and may no longer be protected by the federal privacy requirements. I understand such redisclosures may include but are not limited to the following:

- A copy of the medical information the employer receives may be forwarded to BWC by the employer;

- A copy of the medical information will be available to me or my physician of record upon request to BWC or to the employer.

R.C. 4123.651(C) provides for the suspension of claims as follows:

If, without good cause, an employee * * * refuses to release or execute a release for any medical information, record, or report that is required to be released under this section and involves an issue pertinent to the condition alleged in the claim, his right to have his claim for compensation or benefits considered, if his claim is pending before the administrator, commission, or a district or staff hearing officer, or to receive any payment for compensation or benefits previously granted, is suspended during the period of refusal.

Ohio Adm.Code 4121-3-09(A)(3) provides:

The injured worker must provide, when requested, a current signed medical release as required by division (B) of section 4123.651 of the Revised Code. Should an injured worker refuse to provide a current signed medical release as requested, then the claim shall be referred to the hearing administrator so that an order suspending the claim may be

placed pursuant to division (C) of section 4123.651 of the Revised Code. Medical releases are to be executed on forms provided by the bureau of workers' compensation, the commission, or on substantially similar forms.

{¶ 27} Relator's release is significantly different from the medical release provided by the BWC which specifically limits the information to the workers' compensation claim. By comparison, the medical release relator wants claimant to sign provides in part:

This will authorize you to permit Dawson & Myers, LLC or its duly authorized representative, to examine and make copies of my case records, inpatient and outpatient hospital or clinic medical records, any medical records relating to counseling, treatments and surgeries which you have rendered to me, at any time, including, but not limited to, emergency room records, histories, health history questionnaires, findings, nurses notes, rehabilitation records, x-ray films, x-ray readings and diagnosis, office notes, progress notes, reports, all diagnostic tests results and reports, all correspondence between physicians or attorneys or any other records in your custody or control.

{¶ 28} Relator's proposed release does not limit the request for medical records solely to an injury to claimant's left eye. Instead, the release asks for any and all medical records that have ever existed from providers. Relator contends that its cover letter which instructs claimants to provide the medical release only to those doctors who have treated them for their alleged workers' compensation injuries is sufficient to make its broad medical release complaint. The magistrate disagrees.

{¶ 29} The magistrate finds this court's decision in *State ex rel. Sysco Food Servs. of Cleveland, Inc. v. Indus. Comm.,* 10th Dist. No. 08AP-945, 2009-Ohio-4647 helpful. Edward Rutkowski sustained a work-related injury on February 5, 2008. His employer, Sysco Food Services of Cleveland, Inc. ("Sysco"), through its third-party administrator ("TPA"), sent two letters to Rutkowski asking him to complete forms authorizing the release of health information to Sysco. Apparently, Sysco was not satisfied with the release forms and filed a motion asking to suspend the claim. Sysco had argued that the medical releases were too restrictive. (Some information regarding how Sysco wanted Rutkowski to complete the forms was absent from the record.) An SHO agreed with Sysco, granted the motion to suspend the claim, and further ordered Rutkowski to

provide Sysco "with an unrestricted medical release and give the employer a list of all medical providers that have treated his back for the last ten years." *Id.* at ¶ 27.

{¶ 30} Rutkowski requested the commission reconsider the SHO's decision based on a clear mistake of law. The commission exercised its continuing jurisdiction, vacated the prior order suspending the claim, and found that Sysco's request for medical records going back ten years was unreasonable. That order provided in pertinent part:

> Specifically, the medical release authorization in question included a request for medical documents over the past ten (10) years, which is not in compliance with case law, *State ex rel. Lancaster Colony Corp. v. Indus. Comm.*, 10th Dist. No. 07AP-268, 2008 Ohio 392.
>
> * * *
>
> It is the finding of the Commission that there is no authority under the Ohio Revised Code, the Ohio Administrative Code or case law that allows for a claim to be suspended for failure to execute a medical release that includes a list of all medical providers over a ten-year period prior to the date of the industrial injury.
>
> Historically, the Injured Worker signed two medical release forms, dated 02/07/2008 and 03/10/2008, prior to the 04/04/2008 medical release form request at issue today. The two earlier release forms were signed by the Injured Worker and provided to the Employer. However, the Employer was not satisfied with the content of these release forms and requested submission of a third, more expansive medical release. This request was refused by the Injured Worker and his legal counsel. The Staff Hearing Officer then suspended the claim for the Injured Worker's refusal to comply with the employer's medical release request of 04/04/2008.
>
> First, the Commission finds that the Injured Worker has complied with the Employer's written medical release requests. The Employer sent two letters to the Injured Worker, dated 02/28/2008 and 04/04/2008, respectively. Both letters requested that the Injured Worker execute a medical release and provide a list of doctors and their addresses. In both letters, the Employer specifically requested information from the Injured Worker related to "...this injury." The Employer did not request a medical release or medical information pertaining to the ten years prior to the date of injury in this claim. Therefore, the

Commission finds that the Injured Worker's signed releases, dated 02/07/2008 and 03/10/2008, satisfy the Employer's written requests.

Next, a review of R.C. 4123.651(B) and Ohio Adm.Code 4121-3-09(A)(6) indicates that there are no definite guidelines for what is required in the contents of the medical release. However, under Ohio Adm.Code 4121-3-09(A)(3), "Medical releases are to be executed on forms provided by the bureau of workers' compensation, the commission, or **on substantially similar forms**." (emphasis added) The Commission finds that the requirement to provide "a list of medical providers over a ten-year period prior to the Injury" in the medical release form was not within the contemplation of the statute or rule. Specifically, the Commission finds that the Employer's medical release request is not substantially similar to the Bureau of Workers' Compensation's C-101, Authorization to Release Medical Information, form.

Last, the Commission finds that a medical release request for a ten year period of time, prior to the date of injury, is not reasonable pursuant to the case of [*State ex rel. Lancaster Colony Corp. v. Indus. Comm.*, 10th Dist. No. 07AP-268, 2008 Ohio 392]. Therefore, the Commission finds no legal authority exists to compel the Injured Worker to complete such an expansive medical release form as requested by the Employer.

(Emphasis sic.) *Id.* at ¶ 29.

{¶ 31} Sysco filed a mandamus action. In adopting the decision of its magistrate, this court determined the commission did not abuse its discretion. Specifically, through its magistrate, this court stated:

In the present case, relator contends that the commission abused its discretion when it determined that the order suspending claimant's claim did not comply with *State ex rel. Lancaster Colony Corp. d/b/a Pretty Prod. Inc. v. Indus. Comm.*, 10th Dist. No. 07AP-268, 2008 Ohio 392. The magistrate disagrees with relator's assertions.

In *Lancaster Colony*, the claimant's date of injury was March 14, 1998. In November 2006, the claimant filed an application for permanent total disability compensation. The claimant had completed a medical release form; however, the claimant refused to release social security information as well as records covering the prior ten years in which the

claimant had received any treatment for each of the alleged symptoms and injuries upon which her claim was based. This court found that there was no statute or rule that required the release of information requested by the employer. Specifically, this court adopted the decision of its magistrate as follows:

* * * [The employer] cites no statute or rule requiring the claimant to disclose all of her treating physicians in the manner that relator has requested such information in this case. While R.C. 4123.651 and the rules supplementing the statute demand that the claimant provide a current signed medical release, they do not require the claimant herself to respond to relator's verbal or written requests to identify all of her treating physicians. * * * In the absence of a statute or administrative rule supplementing a statute that grants to relator a clear legal right to compel from the claimant the information that relator seeks, relator cannot obtain relief in mandamus to compel the commission to suspend the claim under R.C. 4123.651.

Moreover, contrary to relator's assertion, claimant's failure to provide the information that relator seeks regarding her treating physicians does not somehow create for relator a clear legal right to compel claimant to execute an SSA release form as an alternative to claimant's failure to respond to relator's requests for information. In fact, this court has held that there is no legal authority to compel a claimant to execute a release for social security records. [*State ex rel.*] *GMRI, Inc. v. Indus. Comm.*, Franklin App. No. 03AP-931, 2004 Ohio 3842.

*Id.* at ¶ 32-33.

In *Lancaster Colony*, the claimant's work-related injury occurred in 1998 and the claimant sought permanent total disability compensation eight years later in 2006. The employer sought the claimant's medical records for the ten years preceding the filing of her application, which included two years prior to the date of her injury. In the present case, relator alleges that claimant was involved in an automobile accident approximately three months prior to the date claimant asserted he sustained injuries at work. In making its argument, relator indicated that claimant's automobile accident may very well be causing some of the current problems which claimant alleged occurred from a work-related injury. However, it is unclear to the magistrate how records going back ten years prior to both the work-related

> injury and claimant's automobile accident are clearly relevant to claimant's workers' compensation claim.

*Id.* at ¶ 34-36.

{¶ 32} In the present case, claimant was not and is not represented by counsel. The magistrate finds it is not necessarily reasonable to assume the claimant was in a position to properly limit the medical release provided him by relator. Further, relator is assuming that hospital staff and doctors' office staff would likewise limit the documents they provide exclusively to claimant's left eye. The form provided by the BWC limits the request of medical records to the specific workers' compensation claim at issue.

{¶ 33} The magistrate finds the commission did not abuse its discretion when it determined that relator's medical release was not substantially similar to that provided by the BWC.

{¶ 34} Finding the commission did not abuse its discretion when it found that relator's medical release was not substantially similar to the BWC's medical release and denied relator's request to suspend claimant's claim, the magistrate likewise finds the commission did not abuse its discretion when it refused to exercise its continuing jurisdiction.

{¶ 35} A large portion of relator's argument at this time focuses on its contention that its medical release has been accepted in the past; therefore, the commission abused its discretion when it found that it did not substantially comply in this instance. As part of that argument, relator contends that it should have been permitted to subpoena Collins so relator could inquire about situations where its medical release or a similar medical release has been accepted by the commission as well as inquire into the training hearing officers receive on this particular issue.

{¶ 36} The magistrate finds that the commission was not required to take testimony how hearing officers are trained to consider this issue.

{¶ 37} These cases are and must be considered on a case-by-case basis. Obviously, a release related to an eye injury would differ from a release related to a motor vehicle accident. In the former, one can identify the body part while in the latter, that would be more difficult. During questing at oral argument, counsel for relator acknowledged that, ordinarily, more records are ultimately provided, many of which are not relevant to the claim at issue. The question then becomes who should be the gatekeeper of the

information.  Certainly, if it is the employer, they learn a lot more about the claimant than they should.  If it is the claimant, they may withhold information concerning a previous injury to a certain body part.   The BWC's C-101 is not perfect but it is an attempt to limit the release of information that is relevant to the claimant's workers' compensation claim.

{¶ 38}  In the present case, the commission had a claimant who was unrepresented by counsel and an employer whose medical release was extremely broad.  The magistrate finds the commission did not abuse its discretion in this case by finding that relator's medical release was not substantially similar to that provided by the BWC, the commission did not abuse its discretion when it refused relator's request to subpoena Collins, and the commission did not abuse its discretion when it refused to exercise its continuing jurisdiction over these matters.  As such, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).